Brent H. Blakely (SBN 157292)
bblakely@blakelylawgroup.com
Jessica C. Covington (SBN 301816)
jcovington@blakelylawgroup.com
BLAKELY LAW GROUP
1334 Parkview Avenue, Suite 280
Manhattan Beach, California 90266
Telephone: (310) 546-7400
Facsimile: (310) 546-7401

*Attorneys for Plaintiff*
*Luxottica Group S.p.A.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUXOTTICA GROUP S.p.A., an Italian Corporation,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>LIQUIDITY SERVICES, INC., a Delaware Corporation; and DOES 1-10, inclusive,<br><br>　　　　　Defendants. | CASE NO.<br><br>**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF FOR BREACH OF CONTRACT** |

**Plaintiff Luxottica Group S.p.A** hereby brings the present action against **Defendant Liquidity Services, Inc.** and respectfully alleges as follows:

## JURISDICTION AND VENUE

1. Plaintiff Luxottica Group S.p.A. ("Plaintiff" or "Luxottica") files this action against Defendant Liquidity Services, Inc. ("Defendant") for breach of contract.

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship and the amount in controversy exceeds $75,000.00.

3. Venue is appropriate in this district, and this Court has personal jurisdiction over Defendant because it has transacted and conducted business in this district, the relevant written agreement is governed by and under the laws of the State of California, and many of the events giving rise to the claims at issue in this lawsuit arose in this judicial district.

## THE PARTIES

4. Plaintiff Luxottica Group S.p.A. ("Luxottica") is a corporation duly organized under the laws of Italy with its principal place of business at Piazzale Luigi Cadorna 3, Milan, 20123 Italy, and an office located at 4000 Luxottica Place, Mason, Ohio 45040-8114. Luxottica is, in part, engaged in the business of producing, manufacturing and distributing throughout the world, including within this judicial district, premium and luxury eyewear products under federally registered trademarks, including but not limited to the Ray-Ban® family of trademarks.

5. Upon information and belief, Defendant Liquidity Services, Inc. is a corporation duly organized and existing under the laws of the State of Delaware with an office and principal place of business at 1920 L St. NW, 6th Floor, Washington, DC 20036.

6. Plaintiff is unaware of the names and true capacities of Defendants, whether individual, corporate and/or partnership entities named herein as DOES 1 through 10, inclusive, and therefore sue them by their fictitious names. Plaintiff will

seek leave to amend this complaint when their true names and capacities are ascertained. Plaintiff is informed and believes, and based thereon alleges, that said Defendant and DOES 1 through 10, inclusive, are in some manner responsible for the wrongs alleged herein, and that at all times referenced each was the agent and servant of the other Defendants and was acting within the course and scope of said agency and employment.

7. Plaintiff is informed and believes, and based thereon alleges, that at all relevant times herein, Defendant knew or reasonably should have known of the acts and behavior alleged herein and the damages caused thereby, and by its inaction ratified and encouraged such acts and behavior. Plaintiff further alleges that Defendant had a non-delegable duty to prevent or cause such acts and the behavior described herein, which duty Defendant failed and/or refused to perform.

## THE WORLD FAMOUS RAY-BAN® BRAND AND ITS PRODUCTS

8. Luxottica is engaged in the manufacture, marketing and sale of premium, luxury and sports eyewear throughout the world. Luxottica's proprietary brands include Ray-Ban, the world's most famous sun eyewear brand, as well as Oakley, Vogue Eyewear, Persol, Oliver Peoples, Alain Mikli and Arnette.

9. Through its affiliates and subsidiaries, Luxottica operates over 7,000 optical and sun retail stores, including LensCrafters, Pearle Vision and ILORI in North America, OPSM and Laubman & Pank in Asia-Pacific, LensCrafters in China, GMO in Latin America and Sunglass Hut worldwide.

10. Ray-Ban® products are distributed and sold through its optical and sun specialty retail stores, authorized retail and department stores throughout the United States, including California, and reach customers nationally and internationally online at www.ray-ban.com.

11. Luxottica is the owner of various trademarks under the Ray-Ban® brand, including but not limited to the following United States Trademark Registrations (collectively "Ray-Ban Marks"):

| Trademark | Registration No. | Goods and Services |
|---|---|---|
| *Ray-Ban* | 650,499 | sunglasses, shooting glasses, and ophthalmic lenses, in class 26. |
| | 1,093,658 | ophthalmic products and accessories – namely, sunglasses; eyeglasses; spectacles; lenses and frames for sunglasses, eyeglasses, spectacles and goggles; and cases and other protective covers for sunglasses, eyeglasses, spectacles in class 9. |
| | 1,726,955 | bags; namely, tote, duffle and all-purpose sports bags, in class 18. |
| | | cloths for cleaning ophthalmic products, in class 21. |
| | | clothing and headgear; namely, hats, in class 25. |
| RAY-BAN | 1,080,886 | ophthalmic products and accessories – namely, sunglasses; eyeglasses; spectacles; lenses and frames for sunglasses, eyeglasses, spectacles – in class 9. |
| | 1,490,305 | clothing, namely, t-shirts, in class 25. |
| | 2,718,485 | goods made of leather and imitation leather, namely, wallets, card cases for business cards, calling cards, name cards and credit cards in class 18. |
| | | clothing for men and women, namely, polo shirts; headgear, namely, berets and caps. |
| (Ray-Ban seal) | 1,320,460 | sunglasses and carrying cases there for, in class 9. |

| | | |
|---|---|---|
| Ray-Ban | 3,522,603 | sunglasses, eyeglasses, lenses for eyeglasses, eyeglasses frames, cases for eyeglasses, in class 9. |

12. Luxottica has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the Ray-Ban Marks. As a result, products bearing the Ray-Ban Marks are widely recognized and exclusively associated by consumers, the public, and the trade as being high quality eyewear products sourced from Luxottica.

13. The Ray-Ban Marks have never been abandoned and are a symbol of Luxottica's quality, reputation, and goodwill.

## CLAIM FOR RELIEF
### (Breach of Contract)

14. Luxottica incorporates herein by reference the averments of the preceding paragraphs as though fully set forth herein.

15. Upon information and belief, Defendant Liquidity Services, Inc. operates various websites, including www.liquidation.com and www.govdeals.com, wherein various types of goods are sold to consumers nationwide (hereinafter collectively "Defendant's Websites").

16. In or around January 2015, Luxottica filed a complaint against Defendant, alleging trademark infringement of the Ray-Ban Marks, among other claims (*Luxottica Group, S.p.A. v. Liquidity Service, Inc.*, Case No. 2:15-cv-00581-R-AJW; Docket No. 1). These claims arose out of Defendant's sale of products bearing counterfeit reproduction of the Ray-Ban Marks on Defendant's Websites.

17. In or around June 2015 Luxottica and Defendant entered into a written settlement agreement, a copy of which is attached hereto and incorporated herein as Exhibit 1 (the "Agreement"). By the terms of said written agreement, Defendant was to

take appropriate steps in the prevention of the sale of products bearing counterfeit reproductions of the Ray-Ban Marks by third-party vendors who advertise, offer for sale, and/or sell goods on Defendant's Websites.

18. Pursuant to Paragraph 1.2.1 of the Agreement, Defendant agreed to refrain from manufacturing, importing, advertising, marketing, promoting, distributing, offering for sale, and/or selling any products bearing counterfeit reproductions of the Ray-Ban Marks.

19. Pursuant to Paragraph 1.2.2 of the Agreement, Defendant agreed to refrain from knowingly assigning, adding, attempting to assist or aid any other person or entity in performing any of the prohibited actves referred to in 1.2.1.

20. Pursuant to Paragraph 1.3 of the Agreement, Defendant accepted duty to take appropriate steps to prevent the sale of products bearing counterfeit reproductions of the Ray-Ban Marks by third-party vendors who advertise, offer for sale, and/or sell goods on Defendant's Websites. These duties included but were not limited to, running searches for "Ray Ban" and similar brand terms on Defendant's Websites and auditing sellers of said products and requiring proof of authenticity from said sellers.

21. The consideration set forth in the agreement was fair and reasonable.

22. Upon information and belief Defendant has failed to fulfill the aforementioned duties, and is thereby in breach of the terms of the Agreement.

23. Defendant has breached the Agreement by continuing to advertise, offer for sale, and/or sell on Defendant's Websites products bearing counterfeit reproductions of the Ray-Ban Marks, and by not taking any measures to prevent such advertisements, offers for sale, and/or sales.

24. In or around June 2018, Luxottica discovered that products bearing counterfeit reproductions of the Ray-Ban Marks Marks (hereinafter "Counterfeit Products") were again and/or continued to be advertised, offered for sale, and/or sold on one or more of Defendant's Websites.

25. Upon information and belief, some of the Counterfeit Products offered for sale on Defendant's Websites were obtained by various government entities from criminal seizures of counterfeit and/or stolen property.

26. Luxottica has provided actual notice to Defendant of its rights to the Ray-Ban Marks and requested that Defendant cease and desist from the further sale of Counterfeit Products.

27. The Counterfeit Products purchased from Defendant's Websites have been delivered to and examined by Luxottica and have been confirmed to be counterfeit.

28. Despite being put on actual notice of the sale of Counterfeit Products on its websites, Defendant continued to advertise, offer for sale, and sell Counterfeit Products on one or more of Defendant's Websites and/or allow third-parties to freely perform such activities.

29. Defendant has never been authorized by Luxottica to manufacture, sell or offer for sale products bearing any of the Ray-Ban Marks. Moreover, Defendant has never been a licensee of Luxottica and has never been licensed and/or authorized in any manner to import, sell, distribute, or manufacture any merchandise bearing the Ray-Ban Marks.

30. Upon information and belief, at all times relevant hereto, Defendant has had full knowledge of Luxottica's respective ownership of the trademarks at issue, including their exclusive right to use and license such intellectual property and the goodwill associated therewith.

31. Luxottica has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the contract.

32. By reason of Defendant's breach of the said contract as herein alleged, Luxottica has suffered damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Luxottica Group S.p.A. respectfully prays for judgment

against Defendant Liquidity Services, Inc. on all claims, as follows:

1. Ordering Defendant to immediately and fully comply with the Agreement;

2. For entry of an ORDER for an accounting by Defendant of all gains, profits, and/or advantages derived from its breach of the Agreement;

3. For an award of applicable interest amounts, costs, disbursements, and/or attorneys' fees;

4. For an award of profits, damages, and fees to the full extent available; and

5. Such other relief as may be just and proper.

Dated: September 7, 2018     BLAKELY LAW GROUP

By: _____
Brent H. Blakely
Jessica C. Covington
***Attorneys for Plaintiff***
***Luxottica Group S.p.A***

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Luxottica Group, S.p.A. hereby demands a trial by jury as to all claims in this litigation.

Dated: September 7, 2018     BLAKELY LAW GROUP

By: _____
Brent H. Blakely
Jessica C. Covington
***Attorneys for Plaintiff***
***Luxottica Group S.p.A***

8
**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

# EXHIBIT 1

## CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (hereinafter, the "Agreement") is entered into as of the date executed herein by and between **Plaintiff Luxottica Group S.p.A.** and **Defendant Liquidity Services, Inc.** Plaintiff and Defendant will hereinafter be referred to collectively as "The Parties."

## RECITALS

**WHEREAS** Plaintiff Luxottica Group S.p.A. ("Luxottica") is the owner of various Ray-Ban trademarks (collectively, the "Ray-Ban Marks"), including but not limited the following United States Trademark Registrations

| Trademark | Registration No. | Good And Services |
|---|---|---|
| *Ray-Ban* (stylized) | 650,499 | sunglasses, shooting glasses, and ophthalmic lenses, in class 26. |
| | 1,093,658 | ophthalmic products and accessories – namely, sunglasses; eyeglasses; spectacles; lenses and frames for sunglasses, eyeglasses, spectacles and goggles; and cases and other protective covers for sunglasses, eyeglasses, spectacles in class 9. |
| | 1,726,955 | bags; namely, tote, duffle and all-purpose sports bags, in class 18.<br><br>cloths for cleaning ophthalmic products, in class 21.<br><br>clothing and headgear; namely, hats, in class 25. |
| **RAY-BAN** | 1,080,886 | ophthalmic products and accessories – namely, sunglasses; eyeglasses; spectacles; lenses and frames for sunglasses, eyeglasses, spectacles – in class 9. |
| | 1,490,305 | clothing, namely, t-shirts, in class 25. |
| | 2,718,485 | goods made of leather and imitation leather, namely, wallets, card cases for business cards, calling cards, name cards and credit cards in class 18.<br><br>clothing for men and women, namely, polo shirts; headgear, namely, berets and caps. |

1

| | | |
|---|---|---|
| (Ray-Ban circular logo) | 1,320,460 | sunglasses and carrying cases there for, in class 9. |
| (Ray-Ban rectangular logo) | 3,522,603 | sunglasses, eyeglasses, lenses for eyeglasses, eyeglasses frames, cases for eyeglasses, in class 9. |

**WHEREAS** Plaintiff has filed an action against Defendant in the United States District Court for the Central District of California, entitled *Luxottica Group S.p.A. v. Liquidity Services, Inc.,* bearing Case No. 2:15-cv-00581-R-AJW (hereinafter, the " Civil Action"), alleging claims of Trademark Infringement, False Designations of Origin, Trademark Dilution and related state law claims arising from the advertisement, offering for sale, and/or sale of eyewear bearing counterfeit reproductions of the Ray-Ban Marks on websites owned/operated by Defendant, including www.liquidation.com. and www.govdeals.com;

**WHEREAS** Defendant has filed an answer in the Civil Action and a motion for judgment on the pleadings denying all liability and arguing that the relief that Plaintiff seeks in the Civil Action is contrary to clearly established law;

**WHEREAS**, the Parties desire to conclude, resolve and settle all claims giving rise to the Civil Action without any admission of liability;

**NOW, THEREFORE**, in consideration of the mutual promises and covenants herein contained and other valuable, full and complete consideration, the receipt and sufficiency of which are hereby specifically acknowledged by the Parties, the Parties hereto agree as follows:

**1.0 AGREEMENT**

1.1 [REDACTED]

1.2 Defendant and its agents, servants, successors and assigns shall not:

    1.2.1 Manufacture, import, advertise, market, promote, distribute, offer for sale, and/or sell any products bearing counterfeit reproductions of the Ray-Ban Marks;

    1.2.2 Knowingly assist, aid or attempt to assist or aid any other person or entity in performing any of the prohibited activities referred to above.

    1.2.3 Knowingly affect any transactions, assignments or transfers, or form new entities or associations to circumvent the prohibitions referred to above.

1.3 Defendant shall take appropriate steps to prevent the sale of products bearing counterfeit reproductions of the Ray-Ban Marks by third-party vendors who advertise, market, offer for sale, and/or sell goods on websites owned, operated, and/or controlled by Defendant (including www.liquidation.com, www.govdeals.com), including but not limited to running searches for "Ray Ban" and similar brand terms on Defendant's websites and auditing sellers of said products and requiring proof of authenticity from said sellers.

1.4 Each party shall bear their own attorneys' fees and costs associated with this Action.

## 2.0 MUTUAL RELEASES

In consideration of the full and faithful performance of all of the terms and conditions of this Agreement, the Parties, on behalf of themselves and their heirs, executors, administrators, successors and assigns, hereby irrevocably and unconditionally release and forever discharge one another and their parents, insurers, subsidiaries, predecessors, successors and assigns and all their respective shareholders, partners, members, directors, officers, employees, agents, and attorneys of and from any and all liability, actions, claims, demands, costs, expenses, damages, causes of action, suits or obligations of any nature, whether at law, equity or otherwise, whether based upon statute, contract, tort or otherwise, whether known or unknown, foreseen or unforeseen, accrued or hereafter accruing, which the parties (or their heirs, executors, administrators, successors or assigns) now have, may have or may hereafter assert against one another, arising in law and/or in equity from and relating to the facts and/or circumstances which form the basis of the claims alleged in the Civil Action up to the date of this Agreement.

Section 1542 of the California Civil Code provides as follows:

3

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."

All parties to this Settlement Agreement have been fully advised by their counsel as to the nature and effect of Section 1542 of the California Civil Code, elect to waive its provisions with respect to all claims arising in law and/or equity from and relating to the facts and/or circumstances which form the basis of the claims alleged in the Civil Action up to the date of this Agreement, and acknowledge that these waivers are an essential and material term of this Settlement Agreement, without which consideration herein would not have been made and delivered.

### 3.0 AGREEMENT NOT A LICENSE

Nothing contained in this Agreement shall be construed as a license, implied or otherwise, by and between Plaintiff and Defendant to use the Ray-Ban Marks issued now or in the future, anywhere in the world. Defendant shall not represent to anyone that any of his products are approved by, sourced, or otherwise affiliated with Plaintiff.

### 4.0 CONFIDENTIALITY

The Parties hereby agree to keep the terms, amounts and the existence of this Agreement completely confidential except as follows: They may discuss this Agreement with their legal counsel, accountant or other tax advisor provided they agree to keep said information confidential and be bound by the Agreement. Either party may disclose this Agreement to extent necessary to enforce its terms or as required by law. In response to any inquiry regarding the disposition of the matter, either party or its representatives shall state only that the Parties have reached a mutually agreeable resolution, which the Parties have agreed to maintain in confidence.

### 5.0 ENTIRE AGREEMENT, MODIFICATIONS AND OTHER GENERAL PROVISIONS

5.1 Integrated Agreement. The Parties agree and acknowledge that this Agreement constitutes and contains the entire agreement and understanding of the Parties concerning the subject matters hereof, and supersedes and replaces all prior negotiations, proposed agreements, or agreements, written, oral, or implied. The Parties further agree that any oral representations or modifications concerning this Agreement shall be of no force or effect, and that this Agreement, including this provision can be modified only by a writing signed by all of the Parties. The Parties acknowledge, one to the

4

other, that no other party, nor any agent or attorney of any other party, has made any promise, representation, or warranty whatsoever (express, implied or statutory) not contained herein concerning the subject matters hereof, to induce them to execute this Agreement; and that they have not executed this Agreement in reliance upon any such promise, representation, or warranty not contained herein.

5.2 Binding Nature. The Parties agree that this Agreement and all of its terms shall be binding upon their respective heirs, legal successors, trustees, assigns, and licensees.

5.3 Governing Law. This Agreement shall in all respect be interpreted, enforced, and governed by and under the laws of the State of California.

5.4 Severability. If any provision or any portion of any provision of this Agreement shall be held unlawful or unenforceable, the balance of this Agreement shall nonetheless in all respects remain binding and effective and shall be construed to be in full force and effect to the extent lawfully permissible.

5.5 Informed Consent. The Parties acknowledge that they have been represented by independent legal counsel of their own choice throughout all of the negotiations which preceded the execution of this Agreement and that they have executed this Agreement with the consent and on the advice of such independent legal counsel. The Parties further acknowledge that they and their counsel have had adequate opportunity to make whatever investigation or inquiry they may deem necessary or desirable in connection with the subject matters of this Agreement prior to the execution hereof and the delivery and acceptance of their consideration specified herein.

5.6 Construction. No party, nor any of the Parties' respective attorneys, shall be deemed the draftor of this Agreement for purposes of interpreting any provision hereof in any judicial or other proceeding that may arise between or among them.

5.7 Titles. Titles contained in this Agreement are inserted only as a matter of convenience and are for reference purposes only. Such titles are not intended to define, limit expand, or describe the scope of this Agreement or the intent of any provision hereof.

5

## 6.0 DISMISSAL OF ACTION

The Parties shall file a *Stipulation to Dismissal of Action With Prejudice* within ten (10) days of execution of this Agreement and Defendant's payment in full of the settlement payment set forth in Paragraph 1.1 above.

## 7.0 EXECUTION OF AGREEMENT

This Agreement may be executed in identical counterparts with the same force and effect as if the signatures were all set forth on a single instrument. This Agreement is deemed to be executed and effective as of the date on which the last party signs a counterpart to this Agreement. Upon execution, the Parties shall exchange executed counterparts, and said exchange may be made by e-mail and/or facsimile transmission.

**IN WITNESS THEREOF**, the Parties hereto have executed this Agreement on the dates signed below.

LUXOTTICA GROUP S.P.A.

By: *[signature]*
Name: Michael A. Boxer
Title: Group General Counsel

Dated: 6/17, 2015

LIQUIDITY SERVICES, INC.

By: _____
Name: _____
Title: _____

Dated: _____, 2015

### 6.0 DISMISSAL OF ACTION

The Parties shall file a *Stipulation to Dismissal of Action With Prejudice* within ten (10) days of execution of this Agreement and Defendant's payment in full of the settlement payment set forth in Paragraph 1.1 above.

### 7.0 EXECUTION OF AGREEMENT

This Agreement may be executed in identical counterparts with the same force and effect as if the signatures were all set forth on a single instrument. This Agreement is deemed to be executed and effective as of the date on which the last party signs a counterpart to this Agreement. Upon execution, the Parties shall exchange executed counterparts, and said exchange may be made by e-mail and/or facsimile transmission.

**IN WITNESS THEREOF**, the Parties hereto have executed this Agreement on the dates signed below.

LUXOTTICA GROUP S.P.A.

By: _____
Name: _____
Title: _____

Dated: _____, 2015

LIQUIDITY SERVICES, INC.

By: _____
Name: James E. Williams
Title: VP, General Counsel & Corporate Secretary

Dated: June 18, 2015

6